IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

JOHN E. WILLIAMS,

        Plaintiff,

vs.                                                    CASE NO. 1:12-cv-236-GRJ

CAROLYN W. COLVIN,[1]
Acting Commissioner of Social Security,

        Defendant.

_____/

# O R D E R

Plaintiff appeals to this Court from a final decision of the Commissioner of Social
Security (the "Commissioner") denying Plaintiff's application for supplemental security
income (SSI). (Doc. 1.) The Commissioner has answered, and both parties have filed
briefs outlining their respective positions. (Docs. 9, 14, 15.) The parties have
consented to have the undersigned United States Magistrate Judge conduct all
proceedings in this case. (Docs. 11, 13.) For the reasons discussed below, the
Commissioner's decision is **AFFIRMED**.

# I. PROCEDURAL HISTORY

Plaintiff filed for SSI under Title XVI of the act on January 4, 2010, alleging
disability due to pain at the site where his right leg had been amputated below the knee
following a 1994 motor vehicle accident. (R. 143, 157, 162, 231.) His applications were
denied initially and upon reconsideration. (R. 41-42.) Plaintiff filed a timely request for
an administrative hearing and a hearing was held before an Administrative Law Judge

---

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.
Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted
for Michael J. Astrue as the defendant in this case.

("ALJ") on October 18, 2011.  (R. 17-32.)  On October 21, 2011, the ALJ issued a decision finding that Plaintiff was not disabled.   (R. 46-53.)  The Appeals Council denied review.  (R. 1-3.)   Plaintiff filed the instant complaint on October 15, 2012, and raises one issue on appeal: whether the ALJ made an improper credibility assessment that is contrary to the Eleventh Circuit's pain standard.  (Docs. 1, 14.)

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[2] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[3]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[4] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[5]

---

[2] *See* 42 U.S.C. § 405(g) (2000).

[3] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[4] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[5] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[6]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[7] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[8]

The ALJ must follow five steps in evaluating a claim of disability.[9] First, if a claimant is working at a substantial gainful activity, he is not disabled.[10] Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[11] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is

---

[6] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[7] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

[8] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[9] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[10] 20 C.F.R. § 404.1520(b).

[11] 20 C.F.R. § 404.1520(c).

disabled.[12] Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.[13] Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.[14]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[15] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[16] The Commissioner may satisfy this burden by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive determination that a claimant is disabled or not disabled.[17]   However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot

---

[12] 20 C.F.R. § 404.1520(d).

[13] 20 C.F.R. § 404.1520(e).

[14] 20 C.F.R. § 404.1520(f).

[15] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); *see also* Doughty v. Apfel, 245 F. 3d 1274, 1278 (11th Cir. 2001).

[16] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:
> In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[17] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

perform a full range of employment at the appropriate level of exertion."[18]  In a situation

where both exertional and non-exertional impairments are found, the ALJ is obligated to

make specific findings as to whether they preclude a wide range of employment.[19]

The ALJ may use the Grids as a framework to evaluate vocational factors so

long as he introduces independent evidence of the existence of jobs in the national

economy that the claimant can perform.[20]  Such independent evidence may be

introduced by a vocational expert's testimony, but this is not the exclusive means of

introducing such evidence.[21]  Only after the Commissioner meets this burden does the

burden shift back to the claimant to show that he or she is not capable of performing

the "other work" as set forth by the Commissioner.

### III.  <u>SUMMARY OF THE RECORD</u>

#### A.  <u>Medical Records</u>

Medical records from Plaintiff's incarceration indicate that in 2008 he received

physical and psychological testing.  (R. 241-54.)  Aside from his right leg prosthesis,

Plaintiff had no abnormalities or musculoskeletal problems.  (R. 242, 244.)  Plaintiff was

required to participate in substance abuse treatment while incarcerated.  (R. 254.)

Plaintiff was released from prison in January 2010, and Dr. Eftim Adhami

---

[18] <u>Wolfe v. Chater</u>, 86 F.3d 1072, 1077 ( 11th Cir. 1996). *See* <u>Jones v. Apfel</u>, 190 F.3d 1224, 1229 (11th Cir. 1999); <u>Walker</u>, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[19] <u>Walker</u>, 826 F.2d at 1003.

[20] <u>Wolfe</u>, 86 F.3d at 1077-78.

[21] *See id*.

performed a consultative examination on February 20, 2010.  Plaintiff denied any

problems with his prosthesis.  On physical exam, Plaintiff's muscle strength was 5/5 in

all muscles, there was no muscle atrophy, no abnormal movements, and his walk was

normal with the prosthesis in place.  His right leg had been amputated 17 centimeters

below the knee.  The stump was generally in good condition but had a small area of

drainage and the beginning of an infection.  The drainage point was also a pressure

pont.  At that point in the exam, Plaintiff reported frequent infections of the stump.  Dr.

Adhami's diagnosis was right leg prosthesis with some infection of the stump;

amputation 17 centimeters below the mid-knee.  (R. 231-35.)  The ALJ gave Dr.

Adhami's assessments great weight.  (R. 51.)

Dr. Lance Chodosh performed a consultative examination on June 10, 2010.

Plaintiff's stump was well healed, and he was able to ambulate in an almost normal

manner, but not very extensively.  Plaintiff needed a new liner for his prosthesis but

could not afford one.  Extensive standing and walking caused discomfort in his stump.

Plaintiff reported being independent in his activities of daily living.  He could not walk

more than 30 minutes or stand more than 15 minutes.  He could sit normally but could

not bend over well and was unable to squat.  Plaintiff could lift up to 20 pounds.

On physical exam, Dr. Chodosh noted that Plaintiff's standing balance was

normal.  His gait reflected a right lower leg amputation but was almost normal.  Plaintiff

could not walk on heel or toe and could not squat and rise.  Dr. Chodosh assessed a

remote below-knee amputation of the right leg with fairly good functional result using a

prosthesis; and hypertension, untreated and without complications.  Dr. Chodosh

opined that based on the objective evidence, Plaintiff could stand and walk occasionally; sit; bend over somewhat; could not squat or kneel; could lift 20-30 pounds; could carry 15 pounds occasionally; could handle objects; and could see, hear, and speak normally. (R. 255-63.) The ALJ gave Dr. Chodosh's assessments great weight. (R. 51.)

State agency expert Dr. Sharmistha Desai reviewed Plaintiff's medical records on June 15, 2010, and opined that Plaintiff could lift 50 pounds occasionally; lift 25 pounds frequently; stand and/or walk six hours in an eight-hour day; and sit about six hours in a workday. (R. 264-71.) The ALJ gave Dr. Desai's opinion little weight, as it was inconsistent with the medical evidence of record. (R. 51.)

Plaintiff visited the health department on June 20, 2011, complaining of low back pain and tenderness in his stump. He admitted to daily alcohol use of 2 quarts of beer per day. Impressions included post traumatic right below the knee amputation; hypertension; alcohol abuse; right stump pain due to poorly fitting prosthesis; and clubbing of fingers. Plaintiff was referred to orthopedics for assistance with replacing his prosthesis. Additional testing was recommended, and medication for hypertension was prescribed. Other medications disclosed in the progress note were flexeril for low back pain and ibuprofen. (R. 277-81.)

## B. Hearing Testimony

Plaintiff testified that he has not worked since his onset date of January 4, 2010, and has no history of alcohol or drug abuse. He does not have a driver's license and lives with his two uncles. He is able to cook and clean as well as bathe and dress

himself. He does not go to the store because it puts a strain on his stump. He usually gets up at 8:00 a.m. and cleans the kitchen, vacuums, showers, and then watches television. The pain from his right leg prosthesis is what prevents him from being able to work full time–it hurts from his back down to his stump. His ability to stand is limited. Plaintiff testified that he receives treatment at the health department, and they give him medication which stops his pain and an ointment for his stump. He does not experience any side effects from the medication.

Plaintiff estimated that in an eight-hour day, he could sit for six hours and stand and walk for 30 minutes. He could lift and carry 20 pounds. He uses a cane because it helps him walk better and relieves the pressure on his stump. (R. 15-32.)

### C. ALJ's Decision

The ALJ determined that Plaintiff suffered from the severe impairments of amputation of the right leg 17 centimeters below the mid knee and hypertension. He found that Plaintiff has the RFC to perform light work with exertional, postural, and environmental limitations. Although Plaintiff had no past relevant work, jobs do exist in significant numbers in the national economy that Plaintiff can perform (cashier, parking lot attendant, ticket taker). Accordingly, the ALJ found that Plaintiff is not disabled. (R. 46-53.)

## IV. DISCUSSION

Plaintiff contends the ALJ erred in evaluating Plaintiff's pain complaints. For the reasons discussed below, the Commissioner's decision is due to be affirmed because the ALJ properly evaluated Plaintiff's credibility and pain complaints.

A claimant may establish his disability through his own testimony of pain or other subjective symptoms. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11ᵗʰ Cir. 2005); *Foote v. Chater*, 67 F.3d 1553, 1560–61 (11th Cir.1995). The ALJ must consider a claimant's testimony of pain and other subjective symptoms where the claimant meets the Eleventh Circuit's three-part "pain standard." *See Foote*, 67 F.3d at 1560. Under that test, evidence of an underlying medical condition must exist. *Id.* If that threshold is met, then there must be either objective medical evidence that confirms the severity of the alleged pain or symptoms arising from the underlying medical condition, or evidence that the objectively-determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain or symptoms. *Id.* A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is sufficient to support a finding of disability. *Id.* at 1561.

If the record shows that the claimant has a medically-determinable impairment that could reasonably be expected to produce his symptoms, the ALJ must evaluate the intensity and persistence of the symptoms in determining how they limit the claimant's capacity for work. 20 C.F.R. § 404.1529(c)(1). In doing so, the ALJ considers all of the record, including the objective medical evidence, the claimant's history, and statements of the claimant and his doctors. *Id*. § 404.1529(c)(1)-(2). The ALJ may consider other factors, such as: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of the claimant's medication; (5) any treatment other than medication; (6) any measures the

claimant used to relieve his pain or symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to his pain or symptoms. *Id.* § 404.1529(c)(3). The ALJ then will examine the claimant's statements regarding his symptoms in relation to all other evidence, and consider whether there are any inconsistencies or conflicts between those statements and the record. *Id.* § 404.1529(c)(4).

If the ALJ decides not to credit the claimant's testimony as to his subjective symptoms, the ALJ must articulate explicit and adequate reasons for doing so or the record must be obvious as to the credibility finding. *See Foote*, 67 F.3d at 1561–62. While the ALJ does not have to cite particular phrases or formulations, broad findings that a claimant was incredible and could work are, alone, insufficient for the Court to conclude that the ALJ considered the claimant's medical condition as a whole. *Id*. at 1562. The ALJ's articulated reasons must also be supported by substantial evidence. *Jones v. Dep't of Health & Human Servs*., 941 F.2d 1529, 1532 (11th Cir.1991). The Court will not disturb a properly articulated credibility finding that is supported by substantial evidence. *Foote*, 67 F.3d at 1562. The failure to articulate reasons for discrediting a claimant's subjective testimony, however, requires that the testimony be accepted as true and becomes grounds for remand where credibility is critical to the outcome of the case*. Id.*

In this case, the ALJ determined that Plaintiff has a medically-determinable impairment that could reasonably be expected to produce his symptoms, and therefore the ALJ evaluated the intensity and persistence of Plaintiff's symptoms in determining

how they limit his capacity for work, as reflected in the records and hearing testimony.

*See* 20 C.F.R. § 404.1529(c)(1)-(2). The ALJ concluded that Plaintiff's complaints were not credible to the extent they are inconsistent with the RFC. (R. 50.) The ALJ went on to articulate additional support for his credibility findings. After reviewing the evidence, the ALJ evaluated Plaintiff's complaints as follows:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. The claimant spent nine years in prison for aggravated assault with intent to commit felony and was released on January 1, 2010 (Exhibit 3F). The claimant reported during his imprisonment that he served as an "houseman" doing simple tasks (Exhibit 4F). Moreover, the claimant testified that he could lift/carry 20 pounds and sit for six hours out of an eight hour day. The claimant also testified that he did not have a history of drug or alcohol abuse, but according to the Department of Corrections records the claimant['s] "drug of choice" was cocaine and alcohol (Exhibit 3F at 13).
>
> In terms of the claimant's alleged medical complaints, they are not supported by medical findings and they are contradicted by medical doctors, the assessments of the consultative examiner, the vocational expert's testimony, and the claimant's own activities, such as providing for his own personal grooming, cooking, cleaning, vacuuming, and watching television.

(R. 50-51.)

Despite Plaintiff's contentions, the ALJ did explain why he only partially credited Plaintiff's subjective complaints of disabling pain. The ALJ pointed to medical evidence that supports his conclusions regarding Plaintiff's credibility. *See* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). For example, the ALJ pointed out that Dr. Chodosh and Dr. Ahami observed that Plaintiff had normal sensation throughout and five out of five muscle strength in all muscles, including the ability to walk normally with his prosthesis

in place. (R. 231-32, 256-59.) Dr. Chodosh also opined that based only on the objective evidence, Plaintiff could stand and walk occasionally; could sit; could bend over somewhat; could lift 20-30 pounds; could carry 15 pounds occasionally; and could handle object. (R. 258.)

The ALJ also considered Plaintiff's allegations in the context of his daily activities. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). The ALJ noted that although Plaintiff alleged that his impairments were so debilitating as to render him unable to work, he testified that he could lift/carry 20 pounds and sit for six hours out of an eight hour day. He also testified to numerous activities of daily living, such as taking care of his personal needs, cooking and cleaning. (R. 23, 49.) Further, Plaintiff testified that his pain was well-controlled with medication, and he had no side effects. (R. 23.) He reported in January 2010 that he was prescribed ibuprofen 600 mg and that it stopped the aching in his stump. (R. 183.)

The ALJ also considered the inconsistencies in Plaintiff's statements. While he testified at the hearing that he had no history of drug or alcohol abuse (R. 20), record evidence indicates that he had previous drug and alcohol dependency problems, and received treatment for them while incarcerated. (R. 50-51, 231, 251, 254, 277.)

Plaintiff points to nothing specific in the medical records that undermines the ALJ's conclusion that his complaints regarding the intensity and persistence of his pain were not fully credible in view of the opinions of the consultative physicians and Plaintiff's daily activities. On this record, the Court concludes that the ALJ properly articulated the credibility finding, and the ALJ's finding is supported by substantial

evidence. *Foote*, 67 F.3d at 1562.

## V. <u>CONCLUSION</u>

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that the decision of

the Commission denying benefits is **AFFIRMED.** The clerk is directed to enter final

judgment and close the file.

**DONE AND ORDERED** this 17th day of December 2013.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge